UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PEOPLE OF THE STATE OF NEW
YORK BY LETITIA JAMES,
ATTORNEY GENERAL OF THE
STATE OF NEW YORK,

       Plaintiff,

 – against –

JAMES DOYLE,

       Defendant.

**OPINION & ORDER**

24-cv-6045 (ER)

---

RAMOS, D.J.:

   James Doyle removed the instant action, a complaint-in-intervention filed by Letitia James, Attorney General of the State New York ("Attorney General") in the Supreme Court of New York, County of New York, to the Southern District of New York on August 8, 2024. Doc. 1 at 1. Before the Court is the Attorney General's motion to remand pursuant to 28 U.S.C § 1447(c). Doc. 21. For the reasons set forth below, the motion is GRANTED.

**I. BACKGROUND**

   In 2017, the American Irish Historical Society ("Historical Society") was in default on their loan from Capital One bank and was facing foreclosure of their Fifth Avenue townhouse, which has served as the Historical Society's headquarters for over 80 years. *See* Doc. 23 ("Sugarman Decl.") Exhibit ("Ex.") 3 ¶¶ 45–46, 49–52.

   On March 14, 2017, the Historical Society's Executive Committee adopted a resolution accepting a commitment from a private lender to loan the Historical Society $3 million. Sugarman Decl. Ex. 3 ¶ 56. That private lender was James Doyle, a member of the Historical Society's board of directors. *Id.* ¶ 60. Doyle requested that the loan be presented to the board as one from an anonymous benefactor, rather than a member of the board of directors. *Id.*

On March 17, 2017, the Historical Society executed a term loan note in which it obtained the $3 million loan from Doyle to satisfy their Capital One mortgage. *Id.* ¶ 61. As collateral, Doyle obtained a mortgage on the Historical Society's primary asset: their Fifth Avenue townhouse. *Id.*

Prior to the adoption of the loan, Doyle failed to disclose to the board of directors, or any authorized committee, that he was the private lender. *Id.* ¶ 63. As a result, neither the board of directors, nor an authorized committee, analyzed the transaction as a related party transaction or accordingly determined that the transaction was fair, reasonable, and in the best interest of the Historical Society. *Id.* ¶ 64. Furthermore, neither the board of directors, nor an authorized committee, documented in writing their basis for approval or their consideration of any alternative transactions. *Id.* ¶ 65.

Between May 2017 and March 2020, the Historical Society paid Doyle under the terms of the loan, but ultimately defaulted on the loan on March 16, 2020, the day the loan matured, after failing to make the final balloon payment. *Id.* ¶¶ 79–81. In an effort to address the debt owed to Doyle and their continuing financial distress, the Historical Society's board of directors, including Doyle, voted unanimously to sell the Fifth Avenue townhouse. *Id.* ¶ 82. After the Historical Society announced their intent to sell the townhouse, the Attorney General received a petition which sought to preserve the townhouse as a monument to the Irish American community and avoid the sale of the property by a small group of individuals "despite all it represents to the Irish in America, in Ireland, and beyond." *Id.* ¶ 86. The petition garnered more than 40,000 signatures. *Id.* In response to the petition, the Attorney General opened an investigation into the Historical Society's affairs. ¶ 87.

The Attorney General's investigation not only revealed the related party transaction, but also that the transaction failed to comply with § 715(a), (b), and (h) of New York's Not-for-Profit Corporation Law ("Not-for-Profit Corp. Law") because: (1) it was neither properly approved for, nor properly ratified by the board of directors; and (2)

Doyle had participated in deliberations and voting related to the related party transaction in which he had an interest.  *Id.* ¶¶ 94–101; *see also* Doc. 22 at 9.

To resolve the investigation, the Attorney General and Historical Society jointly agreed on a settlement agreement to revitalize the organization and preserve the Fifth Avenue townhouse.  *Id.* ¶ 89.  In December 2022, the settlement agreement was announced, which in part required substantial changes to the Historical Society's governance, including appointing a new interim executive director and interim board of directors.  *Id.*  In connection with these changes, Doyle resigned from the board of directors.  *Id.* ¶ 90.  The settlement agreement also required Doyle to "forebear from calling the mortgage through July 1, 2023."  Doc. 1 at 2.

On August 2, 2023, Doyle brought a foreclosure action against the Historical Society in the Supreme Court, New York County, seeking to foreclose on the Fifth Avenue townhouse and alleging that he was owed $3 million in principal, interest, and other fees and costs in connection with his loan.  *See generally Doyle v. American Irish Historical Society Inc.*, No. 850468/2023 (N.Y. Sup. Ct.) (the "State Action"); *see also* Sugarman Decl. Ex. 3 ¶ 92.  Doyle also asked the court to direct a referee to sell the building at a foreclosure auction and deliver the title to the successful bidder.  Sugarman Decl. Ex. 3 ¶ 92.

On October 26, 2023, the Attorney General moved to intervene in the State Action, asserting a related-party transaction claim against Doyle pursuant to Not-for-Profit Corp. Law §§ 112(a)(1) and 715(f).  Sugarman Decl. ¶ 4.  On July 2, 2024, the Attorney General's motion to intervene was granted.  *Id.* ¶¶ 4, 7; *see generally* Sugarman Decl. Ex. 2.  On July 11, 2024, the Attorney General filed its verified complaint-in-intervention, seeking to void and rescind the $3 million loan and mortgage for violation of Not-for-Profit Corp. Law § 715(a), (b), and (h).  *See generally Doyle*, No. 850468/2023, NYECF Doc. No. 51; *see also* Sugarman Decl. Ex. 3 ¶¶ 101.

On August 8, 2024, Doyle removed the Attorney General's complaint-in-intervention to the Southern District of New York based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441 *et seq.* Doc. 1 at 1. On September 9, 2024, the Attorney General moved to remand to New York state court pursuant to 28 U.S.C. § 1447(c). Doc. 21.

## II.  LEGAL STANDARD

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs International, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). Therefore, "[o]n a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." *Wilds v. United Parcel Service, Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (quoting *Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994)); *see also Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) (holding that the party seeking removal bears the burden of proving that the jurisdictional and procedural requirements of removal have been met) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)); *see also Bellido-Sullivan v. American International Group, Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000) ("[T]he party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise.").

Where removal is based on diversity jurisdiction, the defendant seeking removal must show that all of the requirements of diversity jurisdiction have been met. *See Brown v. Eli Lilly and Co.*, 654 F.3d 347, 356 (2d Cir. 2011). Federal courts may exercise diversity jurisdiction only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between… citizens of different [s]tates[.]" 28 U.S.C. § 1332(a)(1).

### III. DISCUSSION

#### A. Doyle Is Not A "Defendant" in the Context of § 1441(a), and the Complaint-in-Intervention is Not Qualitatively Different

Doyle maintains that because the Attorney General's complaint-in-intervention names Doyle as a "defendant" and because that claim is "qualitatively different" from his initial foreclosure action, he may remove that claim, and that claim alone, to this Court. Doc. 33 at 6–8. The Court finds that Doyle is not a "defendant" for purposes of removal under § 1441(a),[1] and the complaint-in-intervention is not qualitatively different from the original foreclosure action to warrant removal as a separate action.

In the context of § 1441(a), "[t]he term 'defendant' refers only to the party sued by the original plaintiff." *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019). Several provisions governing removal of actions permit removal by defendants, but no section provides for removal by a plaintiff. *Hamilton v. Aetna Life and Casualty Co.*, 5 F.3d 642, 643 (2d Cir. 1993). Doyle initiated the State Action, establishing himself as the plaintiff, and implicitly consenting to that court's jurisdiction. Accordingly, he has no right of removal. *See Geiger v. Arctco Enterprises, Inc.*, 910 F. Supp. 130, 131 (S.D.N.Y. 1996) ("It is clear beyond peradventure of a doubt that the right of removal is vested exclusively in defendants. A plaintiff simply may not remove an action from a state court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) . . . Indeed, the statutes say as

---

[1] Section 1441(a) provides: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the *defendant* or the *defendants*, to the district court of the United States for the district and division embracing the place where such action is pending." (emphasis added).

5

much on their face."); *see also Schiffman v. Epstein*, No. 04 Civ. 2661 (SCR) (LMS), 2009 WL 1787760, at *5 (S.D.N.Y. June 23, 2009) ("[T]he federal removal statutes . . . speak *exclusively* of removal from state court to federal court by a *defendant*.") (citations omitted).

That Doyle is referred to as a "defendant" in the complaint-in-intervention is not dispositive. The complaint-in-intervention neither made Doyle a "defendant" in the context of § 1441(a), nor did it commence a separate action in which Doyle is a "defendant" in the usual sense. In *Home Depot*, the Supreme Court established that "a third-party counterclaim defendant is not a 'defendant' who can remove under § 1441(a)." 587 U.S. at 444. Relying on that case, this Court has maintained that third-party defendants in general are not entitled to removal. *See, e.g., Broad Coverage Service v. Oriska Insurance Co.*, No. 20 Civ. 11108 (PMH), 2021 WL 930458, at *2 (S.D.N.Y. Mar. 11, 2021) (holding that third-party defendants "are not 'defendants' who can seek removal under § 1441(a)."). And even before *Home Depot*, it was the view in this District that "[t]he plain text of the statute does not permit removal by a person other than a defendant and courts have routinely held that a third-party defendant may not remove under section 1441(a)." *Casul v. Modell's NY II, Inc.*, No. 04 Civ. 7204 (PKC), 2004 WL 2202581, at *2 (S.D.N.Y. Sept. 30, 2004) (collecting cases) (citations omitted). Considering Congress' intent to restrict federal court jurisdiction and preserve state government independence, "federal courts construe the removal statute narrowly, resolving any doubts against removability," and as such the Court sees no reason to depart from the established view here. *Purdue Pharma L.P.*, 704 F.3d at 213 (citation omitted).

The complaint-in-intervention also did not commence a new, separate action. The Attorney General's motion to intervene and complaint-in-intervention were filed in and consolidated with the State Action. Sugarman Decl. Ex. 2 at 4; Sugarman Decl. Ex. 3. At no point was the complaint-in-intervention severed from the State Action.

The Court also finds that the complaint-in-intervention is not qualitatively different from the State Action. Relying on the complaint-in-intervention's caption, Doyle asserts that he is the "defendant" in a "qualitatively different" case because the complaint-in-intervention "bears no evidentiary or legal overlap with the foreclosure action." Doc. 33 at 6. As such, Doyle claims that he is entitled to remove this sole claim to federal court. Doc. 33 at 6–8. Doyle cites a variety of cases to support that proposition, but those cases are distinguishable. In each of those cases, the removed action had been brought as a completely separate action from the initial state court action, had not been consolidated, and were in fact qualitatively different from the initial action. *See Koch v. Pechota*, No. 10 Civ. 9152, 2012 WL 2402577, at *5 (S.D.N.Y. June 26, 2012) ("[T]he nature of [this action] is qualitatively different [from the initial state court action]," and "[t]he overlap of facts between this case and the state case will be minimal, if any, nor is consolidation of the cases a concern"); *Gissim, Inc. v. Scottsdale Insurance Co.*, No. 16 Civ. 3306 (ILG) (SLT), 2016 WL 7413488, at *3 (E.D.N.Y. Dec. 22, 2016) ("Remanding this case serves no interest . . . as this action and the [underlying state court] action will be litigated separately. There is neither identity of parties nor issues between this action and the [underlying state court] action . . . There is no risk of inconsistent verdicts, as the nature of these two cases is qualitatively different"); *Linzy v. Uber Technologies, Inc.*, No. 21 Civ. 5097 (AJN), 2022 WL 375595, at *4 (S.D.N.Y. Feb. 8, 2022) (holding that the two separate actions will not be consolidated and the allegations in the two cases are qualitatively different because plaintiff's allegations against the other defendant in her original action "contain different causes of actions involving issues that are distinct from those against [defendant].").

Remand is also appropriate here because Doyle removed only one claim pending in the State Action. Unlike the cases cited by Doyle, the complaint-in-intervention was not brought separate from the State Action. The Attorney General moved to intervene in the State Action, and its motion was granted. *See* Sugarman Decl. Ex. 2. There was no

attempt to sever the complaint-in-intervention claim from the original foreclosure action. Instead, Doyle purports to remove a single claim from the larger action to federal court. Section 1441(a) simply states that "any civil *action* brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants[.]" (emphasis added). The statute speaks of removing an *action*, it says nothing of removing individual *claims* from a civil action. Indeed, other courts across the country have held similarly. *See, e.g.*, *Sansotta v. Town of Nags Head*, 724 F.3d 533, 547 (4th Cir. 2013) ("Under 28 U.S.C. § 1441, a defendant may remove a 'civil *action*', and such a removal transfers the entire case to federal court, not simply individual claims in that action.") (emphasis in original) (internal citations omitted); *see also Selective Auto Insurance Co. of New Jersey v. Target Corp.*, No. 19 Civ. 13720 (RMB) (JS), 2019 WL 3208832, at *1 (D.N.J. July 16, 2019) ("[T]he statute cannot be interpreted to allow removal of a portion of a civil action"); *In re Pikeville School Bus Collision Cases*, Nos. 11 Civ. 158 (ART), 11 Civ. 149 (ART), 2011 WL 6752564, at *4 (E.D. Ky. Dec. 23, 2011) ("The removal statutes only permit removal of entire 'civil actions' that are based on diversity jurisdiction; defendants are not allowed to remove pieces of a state court case[.]"). Furthermore, where there is potential for any doubt concerning the scope and implementation of § 1441(a), it is imperative that the Court "resolv[e] any doubts against removability." *Purdue Pharma L.P.*, 704 F.3d at 213 (citation omitted).

And neither is the complaint-in-intervention qualitatively different from the State Action to warrant removal to federal court. There is a considerable overlap of facts as the cause of action in the original foreclosure action, and the Attorney General's complaint-in-intervention concerns the same related party transaction. Furthermore, not only does the Attorney General have the authority to intervene under Not-for-Profit Corp. Law § 112(a)(10) and § 715(f), but in granting the Attorney General's motion to intervene, the New York Supreme Court held that because the Attorney General "seeks to void the loan

8

transaction that is the subject of this action, it plainly has the authority to, at a minimum, permissively intervene in this action." Sugarman Decl. Ex. 2 at 3; *see also* Doc. 34 at 7–8.

Doyle also claims that barring the settlement agreement with the Attorney General following their initial investigation, he would have filed his initial foreclosure action in federal court. Doc. 33 at 5–6. But Doyle offers no explanation for why his inability to reasonably foresee that the Attorney General would intervene in the foreclosure action would have influenced his choice of forum. Doyle brought his action in state court. He "made a strategic decision . . . he cannot now use the removal state to avoid the consequences of that decision." Doc. 34 at 6.

Doyle, as the party seeking to sustain the removal, "bears the burden of demonstrating that removal was proper." *Wilds*, 262 F. Supp. 2d at 171. Doyle has failed to show that removal was proper in this instance. Accordingly, the Attorney General's motion to remand is granted.

### B. Diversity Jurisdiction Is Not Satisfied Here

Even if we could establish that Doyle was a "defendant" in the context of § 1441(a), he has failed to satisfy the requirements necessary to establish diversity jurisdiction. 28 U.S.C. § 1332(a). A defendant seeking to remove a case to federal court "must establish that Plaintiffs and Defendants are citizens of different states . . . and that there is 'a reasonable probability' that the claim exceeds the sum or value of $75,000." *McGrath v. Industrial Waste Technologies,* No. 20 Civ. 2858 (KPF), 2021 WL 791537, at *4 (S.D.N.Y. Feb. 26, 2021) (quoting *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)).

The Court finds that Doyle has failed to show that he and the Attorney General were *citizens* of different states. While true that Doyle is a citizen of the state of Georgia, Sugarman Decl. Ex. 3 ¶ 7, Letitia James, as the Attorney General of the State of New York, is a representative of the *state* of New York. "[A] [s]tate is not a 'citizen' for

9

purposes of the diversity jurisdiction." *Moor v. Alameda County*, 411 U.S. 693, 717 (1973). "'[B]ecause a [s]tate's presence as a party will destroy complete diversity', when a state or state official brings suit, courts consider whether the state is the real party in interest before concluding that diversity jurisdiction does not lie." *New York by James v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 130 (S.D.N.Y. 2021) (quoting *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014)). "When a holistic review of the complaint reveals that a state 'merely asserts the personal claims of its citizens, the state is not the real party in interest.'" *Id.* (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 341 (2d Cir. 1985)).

The Court finds that the State, represented by the Attorney General, was the real party in interest here. We can distinguish a plaintiff who sues "solely in [their] capacity as an agent" from "a plaintiff who sues not only as an agent, but also as an individual who has [their] own stake in the litigation." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 194 (2d Cir. 2003). While the former is not a "real and substantial party to the controversy," the latter is. *See id.* The Court in *New York by James* made that distinction when it held that the State had a "quasi-sovereign interest independent from the interests of individual citizens" in "guaranteeing a marketplace that adheres to standards of fairness, as well [as] ensuring that business transactions in the state do not injure public health." *New York by James*, 550 F. Supp. 3d at 130–131.

Similar to *New York by James*, the Court finds that the State has a quasi-sovereign interest independent from the interests of the Historical Society—making it a real party in interest in this case. In particular, here the State has a strong interest in enforcing its Not-for-Profit laws. *See In re McDonell*, 757 N.Y.S.2d 678, 680 (N.Y. Sup. Ct. 2002) ("The state legislature has given the Attorney General broad supervisory and oversight responsibilities over charitable assets and their fiduciaries, as enumerated in the Not-for-Profit Corporation Law, the EPTL and the Executive Law.") (citation omitted); *see also People ex. Rel Schneiderman v. James*, 971 N.Y.S.2d 73, 2013 WL 1390877, at *4 (N.Y.

Sup. Ct. 2013) ("Given 'the significant public interest in the management and affairs of not-for-profit corporations,' the 'Attorney General has extensive supervisory and enforcement authority over not-for-profit corporations'") (quoting *People ex rel. Spitzer v. Grasso*, 54 A.D.3d 180, 191 (N.Y. App. Div. 2008)).

The State here has an interest in preventing corporations from entering into unauthorized or unlawful related party transactions. In particular, it seeks to ensure that such transactions are "determined by the board, or an authorized committee thereof, to be fair, reasonable, and in the corporation's best interest." Not-for-Profit Corp. Law § 715(a). By seeking to void the illegal related party transaction here, the Attorney General is acting within that quasi-sovereign interest. *See* Doc. 22 at 25. Any implications this would have on the Historical Society are incidental to the State's interests generally in maintaining the affairs of not-for-profit corporations and enforcing their charities laws. This is not to say that the Historical Society is not an interested individual citizen, but even then, "the presence of interested individual citizens 'does not necessarily negate' a plaintiff state's interest." *New York by James*, 550 F. Supp. 3d at 131 (quoting *Purdue Pharma*, 704 F.3d at 220). The Attorney General, acting on behalf of the State, is not a "citizen" for the purposes of diversity jurisdiction.

In light of the Court's finding that defendant has not established diversity of citizenship, the Court need not determine whether the amount-in-controversy exceeds $75,000.

## IV.  CONCLUSION

In light of the foregoing, the motion to remand is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 21, and to remand the action back to the Supreme Court of New York, New York County.

It is SO ORDERED.

Dated:  July 7, 2025
        New York, New York

                                                      EDGARDO RAMOS, U.S.D.J.